FEDER KASZOVITZ LLP
ATTORNEYS AT LAW

845 THIRD AVENUE
NEW YORK, NY 10022-6601

E-MAIL:                    TELEPHONE: (212) 888-8200                    FACSIMILE: (212) 888-7776

March 21, 2018

**VIA ECF**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:     **Quadlogic Controls Corporation v. Pounce Electronics S.A. de C.V.**
            **Civil Action No.: 18-cv-0400 (ER)**

Dear Judge Ramos:

    We represent the Plaintiff in the above-captioned action, and write, pursuant to Rule (2)(A)(ii) of Your Honor's Individual Rules, to request a further pre-motion conference to address the motion contemplated below to dismiss Defendant's Counterclaims and certain affirmative defenses pursuant to Fed. R. Civ. P. 12(b)(6) and 12(f)(2), respectively, for failure to state a claim upon which relief can be granted.

    By this lawsuit, Plaintiff, *inter alia*, seeks to recover millions of dollars of unpaid royalties from Defendant pursuant to a written Master License Agreement dated February 23, 2017 ("MLA") pursuant to which Defendant licensed Plaintiff's intellectual property, including patents and know-how ("IP"), for Defendant's manufacture and sale of electric metering systems in Mexico, and injunctive relief to enjoin Defendant's breaches of the restrictive covenants in the MLA.

    Defendants' Counterclaims assert that Plaintiff entered into two "verbal" agreements to use Plaintiff's IP for two separate electric metering projects in Mexico, which Defendant denominates as the "Aldesa Agreement" (Counterclaim ¶ 4), and the "Dragon Agreement." (Counterclaim ¶ 6) According to Defendant, these verbal agreements were superseded: first by a one page "interim" agreement, dated October 8, 2016 (the "October Agreement") that Defendant denominates as the "Original Agreement" (Counterclaim ¶¶ 12, 37), and the MLA – a comprehensive 27 page agreement which Defendant denominates as the "Quadlogic Amendment." (Counterclaim ¶ 14)

    Because the MLA contains an acceptance by Defendant of Plaintiff's performance to date (section 7.3(c)) and contains a merger clause (section 12.6) superseding any and all oral or

Honorable Edgardo Ramos
March 21, 2018
Page 2

written agreements, Defendant's First Counterclaim alleging a breach of the October Agreement is barred by the parol evidence rule and the express language of the MLA.

As best discernible, the breaches alleged by Defendant in the Second Counterclaim involve Plaintiff's alleged failure to deliver ancillary products and support provided for in Schedule G of the MLA.  (Counterclaim ¶¶ 22-25)  Schedule G, however, contains express language (ignored by Defendant) disclaiming liability for Plaintiff's alleged failures under this schedule ("Notwithstanding anything in the Master License Agreement, [Quadlogic] shall have no liability to Pounce for its undertakings under Schedule G").

The Third Counterclaim alleges that through economic duress, Plaintiff breached its implied covenant of good faith and fair dealing with respect to its negotiation of the MLA insofar as Plaintiff insisted, after a year, that a license for its IP be signed.  This Counterclaim fails as the documentary evidence of the long history of negotiations between the parties shows that Plaintiff, for more than a year, was chasing Defendant to address the draft master license agreement; that Defendant was constantly avoiding finalizing a master license while all the while using Plaintiff's IP; and that Plaintiff was entirely justified and within its rights as established by the documentary evidence (including the October Agreement) to have a license finalized and executed, and if not, for Defendant to stop using its IP.  As shown below, Defendant's attempt to invalidate the MLA on economic duress grounds (which is the same as its claim of lack of good faith in the Third Counterclaim) fails as a matter of law.  In sum, the MLA survives, and is enforceable, thereby negating the First, Second, and Third Counterclaims.

The Fourth Counterclaim for unjust enrichment cannot stand in light of Defendant's contention that there were valid agreements in place.  *See Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572, 841 N.E.2d 742, 746, 807 N.Y.S.2d 583, 587 (2005); *Basis Yield Alpha Fund v. Goldman Sachs Group, Inc.*, 115 A.D.3d 128, 141, 980 N.Y.S.2d 21, 31 (1st Dep't 2014).

In addition, Plaintiff seeks to dismiss Defendant's First, Fourth, Eighth, Eleventh, and Twelfth Affirmative Defenses.  The Fourth and Eighth Affirmative Defenses, for laches and statute of limitations, are frivolous on their face.  Plaintiff brought this action for breaches that occurred in the second half of 2017 and continue to date.  There is no conceivable manner in which Plaintiff's claims arising from breach of contract are beyond the relevant statutes of limitations or in violation of the doctrine of laches.

The First Affirmative Defense, lack of personal jurisdiction, is similarly barred by the MLA (sections 12.16 and 12.17), which contains an unequivocal consent to jurisdiction before this Court, and an agreement by Defendant to appoint a United States based agent (its California attorney) for the service of process.

The Twelfth Affirmative Defense based on lack of consideration is also frivolous given Defendant's admitted use of Plaintiff's IP.

The Eleventh Affirmative Defense, for economic duress, is patently deficient.  Accepting Defendant's factual allegations as true, the conduct identified does not rise to the level of

Honorable Edgardo Ramos
March 21, 2018
Page 3

economic duress as a matter of law, which requires pleading of facts showing that Plaintiff engaged in a "wrongful threat" that deprived Defendant of its free will. *Stewart M. Muller Constr. Corp. v. N.Y. Tel. Co.*, 40 N.Y.2d 955, 956, 359 N.E.2d 328, 390 N.Y.S.2d 817 (1976). At the heart of Defendant's economic duress claim is its contention that Plaintiff "***abruptly demanded***" (Counterclaim ¶¶ 14, 38) (emphasis added) that Defendant execute the MLA so as to deprive it of its free will. As will be shown through the October Agreement, prior drafts, and correspondence between the parties, this contention is demonstrably false and unsustainable. The documentary record will clearly show that Plaintiff was trying to get Defendant to execute a license agreement *for more than a year while all the while Defendant was using Plaintiff's IP and collecting millions of dollars of revenue from it.*

Because there was nothing remotely "abrupt" involved here and because Defendant had failed to meet every prior deadline for completing a master license agreement, Plaintiff's insistence on having a master license signed while Defendant was using its IP, cannot, as a matter of law, be deemed wrongful so as to constitute economic duress. *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 655 F.3d 136, 143 (2d Cir. 2011) ("it is axiomatic that [a party] cannot be guilty of economic duress for failing to grant further forbearance when [it] ha[s] no legal duty to do so") (internal citation omitted).

Furthermore, Defendant never repudiated or terminated the MLA on the ground of economic duress (or on any other ground). The law is well established that a contracting party claiming duress must assert that claim immediately; there can be no delay in asserting it. *Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 2013 WL 1191895 at *9 (S.D.N.Y. Mar. 22, 2013), citing *Bank Leumi Trust Co. v. D'Evori Int'l, Inc.*, 163 A.D.2d 26, 31, 558 N.Y.S.2d 909, 914 (1st Dep't 1990). Here, Defendant asserts economic duress for the first time in its Answer, more than one year after the MLA was signed, and many months after the meters called for under the Aldesa and Dragon Agreements were shipped, and Defendant was paid for them (without paying the concomitant royalties to Plaintiff). Given the undisputed fact that Defendant never repudiated the MLA on economic duress grounds, it is barred from asserting that defense or basing any Counterclaims on it as a matter of law.

Finally, the documentary record establishes that long after the alleged duress (and Plaintiff's other supposed breaches), Defendant was still seeking out Plaintiff for new metering projects in Mexico. Defendant's action, *after* the alleged duress, are, as a matter of law, antithetical to any duress claims.

Accordingly, Plaintiff respectfully requests that the pre-motion conference, in addition to addressing its proposed motion for preliminary anti-suit injunctive relief, also address Plaintiff's contemplated motion for dismissal of the Counterclaims and Affirmative Defenses as set forth above.[1]

---

[1] Alternatively, Defendant will seek to supplement its motion to dismiss pursuant to Fed. R. Civ. P. 12(d), establishing its entitlement to summary judgment based on documentary evidence showing that Defendant's undisputed course of conduct following the alleged duress invalidates its claim and for judgment for royalties due as a matter of law by reason of

Honorable Edgardo Ramos
March 21, 2018
Page 4


Respectfully submitted,

David Sack

cc:     Brian A. Katz, Esq. (via ECF)

Defendant's failure to repudiate or terminate the MLA and its election to continue to use
Plaintiff's IP under its license.