**OLSHAN**

1325 AVENUE OF THE AMERICAS ▪ NEW YORK, NEW YORK 10019
TELEPHONE: 212.451.2300 ▪ FACSIMILE: 212.451.2222

EMAIL: BKATZ@OLSHANLAW.COM
DIRECT DIAL: 212.451.2276

April 11, 2018

**By ECF**
Hon. Edguardo Ramos
United States District Judge
United States District Court, Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    <u>*Quadlogic Controls Corp. v. Pounce Elecs. S.A. de C.V.*, No. 18-cv-00400 (ER)</u>

Dear Judge Ramos:

    We represent defendant and counterclaim-plaintiff Pounce Electronics S.A. de C.V. ("Pounce") in this action. We write in response to the pre-motion letter filed on March 21, 2018 by counsel for plaintiff and counterclaim-defendant Quadlogic Controls Corporation ("Quadlogic") requesting a conference in connection with Quadlogic's anticipated motion to dismiss Pounce's counterclaims and certain affirmative defenses (the "Quadlogic Letter"). As set forth below, Quadlogic's anticipated motion lacks merit.

    In this action, Quadlogic alleges that Pounce failed to pay certain royalties pursuant to a certain license agreement dated February 23, 2017 (the "Quadlogic Amendment").[1] As an initial matter, and as set forth below, Pounce challenges the enforceability of the egregiously one-sided Quadlogic Amendment on several grounds. Pounce has also asserted counterclaims in this action arising out of the parties' business relationship. Contrary to Quadlogic's position, each of these claims is well-pled and should be sustained.

    Pounce's First Counterclaim alleges that Quadlogic breached the parties' original agreement by failing to provide adequate infrastructure and support for Quadlogic's IP and products (defined as the "Original Agreement."). Quadlogic contends that it cannot be liable for breaching the Original Agreement because § 7.3(c) of the later-executed Quadlogic Amendment "contains an acceptance by [Pounce] of [Quadlogic's] performance to date." That is a mischaracterization of the Amendment. As an initial matter, even assuming the Amendment is enforceable (and it is not), it states only that "Pounce agrees that *the features* in the Licensed Produces Shipped as of this date . . . are complete and have met all functional tests as of this date and have been accepted by Pounce." (emphasis added). The primary basis of Pounce's counterclaim, however, is that Quadlogic failed to provide the *support* it had promised to provide so as to allow Pounce to take advantage of that technology. At no point did Pounce accept

---

[1] Unless otherwise noted, all capitalized terms are as defined in Pounce's March 12, 2018 Answer, Affirmative Defenses and Counterclaims (the "Pounce Pleading:). Quadlogic refers to the Quadlogic Amendment as the "MLA." (*See* Quadlogic Letter at 1).

April 11, 2018
Page 2

Quadlogic's (lack of) performance in supporting Pounce's use of the technology as adequate or consistent with any agreement between the parties.[2]

Pounce's Second Counterclaim, pled in the alternative, alleges that Quadlogic breached the Quadlogic Amendment by failing to comply with Schedule G's obligations to, among other things, support and provide technical assistance to Pounce. Quadlogic argues that it cannot be liable under Schedule G because that Schedule states that Quadlogic "shall have no liability to Pounce for its undertakings [thereunder]." (Quadlogic Letter at 2). Quadlogic's interpretation makes no sense. It is tantamount to Quadlogic agreeing that it "is obligated to support Pounce, but is not obligated to support Pounce." Courts do not interpret agreements in such bizarre ways. *See, e.g.*, *In re DPH Holdings Corp.*, 553 B.R. 20, 28 (Bankr. S.D.N.Y. 2016) ("Unless otherwise indicated, words should be given the meanings ordinarily ascribed to them and absurd results should be avoided."); *see also Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010) ("Under Delaware law . . . an unreasonable interpretation produces an absurd result or one that no reasonable person would have accepted when entering the contract.").

Even assuming Quadlogic's interpretation is correct, however (and it is not), and notwithstanding that Pounce maintains the Quadlogic Amendment is unenforceable in its totality (*see* Pounce Pleading ¶¶ 61, 62), New York law is clear that a party cannot hide behind an exculpatory clause to insulate it from liability for its intentional or bad faith conduct.[3] This is especially true here in light of the fact that the same Schedule G also requires Quadlogic to "use its reasonable commercial efforts to provide Pounce with the support described" in the Schedule, which it did not do. The purported exculpatory language is unavailing.

Pounce's Third Counterclaim asserts that Quadlogic has breached the implied covenant of good faith and fair dealing by refusing to negotiate the Quadlogic Amendment in good faith, in part by abruptly threatening to shut down operation of its power systems for millions of Mexican consumers. In support of its intended motion, Quadlogic raises only factual issues that are inappropriate for resolution at this stage. Indeed, Quadlogic relies on so-called documentary evidence outside the pleadings and what it claims "the long history of negotiations between the parties shows." (Quadlogic Letter at 2; *accord id*. at 3 (describing what "[t]he documentary record will clearly show")). To the contrary, Pounce alleges that Quadlogic's ultimatum demanding Pounce to accept the one-sided terms it presented in the Quadlogic Amendment was indeed abrupt

---

[2]  Contrary to Quadlogic's suggestion, the so-called "merger clause" contained in the Quadlogic Amendment is not a release by Pounce of already accrued claims against Quadlogic, and there is no credible suggestion that Pounce understood it was in fact releasing such claims in the Amendment.

[3]  *See, e.g.*, *Simon-Whelan v. Andy Warhol Found. for the Visual Arts, Inc.*, No. 07 CIV. 6423(LTS), 2009 WL 1457177, at *4 (S.D.N.Y. May 26, 2009) ("A party may not invoke such an agreement to insulate itself from intentional wrongdoing, such as that alleged in this action.") (citing *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384-85, 461 N.Y.S.2d 746 (1983) ("[A]n exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances. Under announced public policy, it will not apply to exemption of willful or grossly negligent acts . . . [and] an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing.") (citations omitted)).

4556728-3

April 11, 2018
Page 3

and/or improper, as discovery will show. While Quadlogic may dispute Pounce's version of events, resolution of that factual issue now is inappropriate. Pounce's implied covenant claim should be sustained.

Relatedly, Quadlogic also misstates the law as it relates to Pounce's duress affirmative defense. The cases cited by Quadlogic do not hold that such a defense must be asserted "immediately" and that "there can be no delay" in doing so. (*See* Quadlogic Letter at 3). In fact, in *Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, No. 12 CIV. 2827(NRB), 2013 WL 1191895 (S.D.N.Y. Mar. 22, 2013), cited at 3 of the Quadlogic Letter, the Court stated that the plaintiff could not rely on duress because it waited approximately *four years* to do so. *See* 2013 WL 1191895, at *1 n.2 and *4. This, at the very least, is an issue of fact that is not appropriate for resolution at the pleading stage.[4]  Quadlogic's challenge to Pounce's remaining affirmative defenses are similarly unavailing.[5]

Quadlogic's only argument for dismissal of the Fourth Counterclaim for unjust enrichment is based on "Defendant's contention that there were valid agreements in place." (Quadlogic Letter at 2). There are, however, serious questions as to the validity of the written agreements at issue. Specifically, as discussed above, Pounce asserts that the Quadlogic Amendment should be voided based on (among other defenses) duress, while Quadlogic claims that "any and all oral or written agreements" previously entered into by the parties were "supersed[ed]." In these circumstances, there is nothing preventing Pounce from asserting a counterclaim for unjust enrichment.[6]

Respectfully,

*/s/ Brian A. Katz*

Brian A. Katz

---

[4]  *See, e.g.*, *Yoon Jung Kim v. Gahee An*, 150 A.D.3d 590, 593-94, 55 N.Y.S.3d 210, 213 (1st Dept. 2017) ("[W]here during the period of acquiescence or at the time of the alleged ratification the disaffirming party is still under the same continuing duress, he has no obligation to repudiate until the duress has ceased.") (citation and internal quotations omitted); *see also Sosnoff v. Carter*, 165 A.D.2d 486, 492, 568 N.Y.S.2d 43, 47 (1st Dept. 1991) ("[D]efendants made a showing, also in opposition, of their repeated protests as to the conduct of Sosnoff. These protests were inconsistent with any act of ratification and were some evidence of defendants' preservation of a claim of economic duress.")

[5]  Quadlogic's only basis for personal jurisdiction over Pounce is the jurisdictional clause in the Quadlogic Amendment, the enforceability of which is also a question of fact and contested by Pounce, as is the so-called "consideration" Quadlogic claims to have extended to Pounce. As pled, it is also not clear when certain of Quadlogic's claims accrued (*see, e.g.*, Count VI under the Economic Espionage Act), and as such, dismissal of Pounce's defense of statute of limitations or laches is premature. *See, e.g.*, 18 U.S.C. § 1836(d) (three-year statute of limitations).

[6]  *See Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 458-59 (S.D.N.Y. 2016) ("While the existence of a contract generally bars recovery based on the quasi-contract theory of unjust enrichment . . . a claim for unjust enrichment may survive a motion to dismiss where the plaintiff challenges the contract's validity.") (citations omitted, collecting cases).

4556728-3